**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00138-MR**

| | | |
|---|---|---|
| RICHARD EDWARD WHELCHEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| ANDREW SAUL, Commissioner | ) | |
| of Social Security | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Commissioner's Motion for Summary Judgment [Doc. 12].

**I.  BACKGROUND**

On May 15, 2015, Richard Edward Whelchel (the "Plaintiff") filed for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of May 15, 2015. [Transcript ("T.") at 190]. His claims were initially denied on August 11, 2015, and upon reconsideration on January 7, 2016. [Id. at 112-15]. On the Plaintiff's request, a hearing was held on August 4, 2017 before an Administrative Law Judge ("ALJ"). [Id. at 42-80]. On February 16, 2018, the ALJ issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not

disabled within the meaning of the Act since May 15, 2015. [Id. at 26-36]. On March 6, 2019, the Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667

F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional

investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to

step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his limitations prevent him from performing his past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must

establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy.  Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006).  "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied.  Id.  Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since the alleged onset date, May 15, 2015. [T. at 28].  At step two, the ALJ found that the Plaintiff has migraines, which are a severe impairment.  [Id. at 28-29].  At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings.  [Id. at 30].  The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can never climb ladders, ropes, or scaffolds, but can frequently balance.  The claimant should never be exposed to extreme heat and should work in an environment with moderate or

> less noise. The claimant should have no concentrated exposure to vibration, fumes, dust, odors, or other pulmonary irritants. Finally, the claimant should never work around hazards such as unprotected heights, or dangerous or moving machinery.

[Id.].

At step four, the ALJ found that the Plaintiff is capable of performing past relevant work as an Administrative Management Officer and as a Security Consultant. [Id. at 35]. As such, the ALJ found that the Plaintiff is not disabled within the meaning of the Act. [Id.].

## V. DISCUSSION[1]

The Plaintiff presents three arguments as grounds for reversal of the ALJ's decision. First, the Plaintiff argues that the ALJ erred by finding that the Plaintiff's migraines did not meet or equal a Listing. [Doc. 11 at 6]. Second, the Plaintiff argues that the ALJ's assessment of the Plaintiff's RFC was not supported by substantial evidence. [Id. at 16]. Third, the Plaintiff argues that the ALJ erred by finding that the Plaintiff is capable of returning to his past relevant work. [Id. at 22].[2]

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

[2] The Plaintiff further argues that if the ALJ erred by finding that the Plaintiff could return to his past relevant work, he also erred by failing to find that there were other jobs that the Plaintiff could perform that were available in sufficient numbers in the national economy. [Id. at 23].

7

### A. Whether the Plaintiff met the Listing

The Plaintiff first argues that the ALJ erred by finding that the Plaintiff did not meet or equal a listed impairment or a medical equivalent. [Doc. 11 at 13].[3] Because there is no listing for migraines, [T. at 30], the ALJ evaluated the Plaintiff under Listing 11.02 or an equivalent medical impairment.

A claimant bears the burden of proving that she meets or equals a listing. See Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013) (stating that the claimant bears the burden of proof through step four of the sequential evaluation). In addition, "[f]or a claimant to show that [her] impairment matches a listing it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990)

---

[3] The Plaintiff does not argue that the ALJ erred by finding that the Plaintiff does not *meet* Listing 11.02, which requires the claimant to have "(a) Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or (b) Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or (c) Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself; or (d) Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff's argument is only that his symptoms *equal* this listing.

(footnotes and citation omitted).  Similarly, "[f]or a claimant to qualify for benefits by showing that [his] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [he] must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  Id. at 531 (footnote and citation omitted).  To show medical equivalence, the record also must contain: (a) a prior administrative medical finding from an medical consultant or psychological consultant from the initial or reconsideration adjudication levels supporting the medical equivalence finding, (b) medical expert evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding; or (c) a report from the Appeals Council's medical support staff supporting a medical equivalence finding.  SSR 17-2p, WL 3928306, at *3.

The ALJ found that the Plaintiff failed to meet the evidentiary requirements for a finding of medical equivalence because he failed to demonstrate a "prior administrative medical finding from a Medical Consultant or Psychological Consultant . . . or Medical Expert evidence . . . supporting the medical equivalence finding."  [Id.].  While the Plaintiff now argues that his symptoms are equivalent in severity to the symptoms associated with Listing 11.02, he still does not identify any evidence from

specific medical experts regarding equivalency as required under SSR 17-2p. As such, the ALJ correctly found that the Plaintiff is not disabled by virtue of meeting Listing 11.02 or a medical equivalent. The Plaintiff's first assignment of error, therefore, is without merit.

### B. Whether the ALJ's RFC was Supported by Substantial Evidence

The Plaintiff next argues that the ALJ's decision regarding the Plaintiff's RFC was not supported by substantial evidence. [Doc. 11 at 16]. Specifically, the Plaintiff argues that the ALJ erred by failing to account for the Plaintiff's hearing testimony and the Plaintiff's migraine journal and logs, and by improperly weighing the opinion evidence. [Doc. 11 at 18-22]. The Plaintiff contends that if the ALJ had properly considered the evidence, he would have found that the Plaintiff would miss more than two or three days per month and would be off task more than fifteen percent of the time. [Id. at 18-19].[4]

A claimant's RFC is an administrative assessment by the Commissioner of what a claimant can still do despite his physical or mental limitations. SSR 96-8p, 1996 WL 374184, at *1; 20 C.F.R. §§ 404.1546(c); 404.943(c). Social Security Ruling 96-8p explains how adjudicators should

---

[4] According to the hypothetical questions that the ALJ posed to the VE, such limitations would have rendered the Plaintiff incapable of performing his past relevant work.

assess a claimant's RFC, instructing that it "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. SSR 96-8p; see also Mascio, 780 F.3d at 636 (noting that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted). This "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks omitted). "[T]he ALJ must both identify evidence that supports [her] conclusion and build an accurate and logical bridge from that evidence to [her] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets and internal quotation marks omitted). Such analysis is a "necessary predicate" to determining whether substantial evidence supports the ALJ's findings. Monroe, 826 F.3d at 189 (quoting Radford, 734 F.3d at 295).

Here, the ALJ found that the Plaintiff's migraines significantly limit his ability to perform basic work activities. [T. at 29]. The ALJ further found that

the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his statements "about the intensity, persistence and limiting effects of [his] symptoms are inconsistent with the medical evidence and the claimant's own reports of his functional abilities." [Id. at 31-32].

The ALJ described the evidence he used to support his conclusion, including the Plaintiff's testimony, the Plaintiff's symptoms, the record evidence, and the opinion evidence from treating and non-treating sources. The ALJ mentioned that the Plaintiff had a forty-year history of migraines, that the Plaintiff's migraines were somewhat controlled by medication, and that the Plaintiff had normal neurological examinations. [Id. at 30-32]. The ALJ also noted that the Plaintiff was able to successfully work and perform daily activities despite frequently reporting migraines over several years. [Id.]. The ALJ highlighted that the Plaintiff testified that he did not lose his job because of migraines and that he did not stop working on his alleged onset date because of migraines. [Id. at 32].

With regard to the opinion evidence, the ALJ placed great weight on the opinions from the state agency consultants Lillian Horne, M.D., Ellen Huffman-Zechman, M.D., and Brett A. Fox, Psy.D; placed significant weight on the opinion from treating physician Dennis G. Isiguen, M.D.; and placed

little weight on the opinions from treating physician David Brantley, III, Psy.D, and the Plaintiff's wife, Marilyn Daigle. [T. at 33-35]. Dr. Isiguen's opinion, which the ALJ found consistent with the record as a whole, was that the Defendant could generally perform work despite his migraine symptoms and that he could wait until bedtime to take acute medication. [Id. at 33]. Dr. Brantley's opinion was that the Plaintiff would be mildly to moderately impaired in his ability to understand, retain, and follow instructions, especially when suffering from a migraine. [Id. at 34]. The ALJ, however, afforded Dr. Brantley's opinion little weight because it provided a vague assessment, it did not relate to a matter within Dr. Brantley's specialty, and it was inconsistent with the other medical evidence in the record. [Id.].

The Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence because the state agency consultants, Dr. Horne and Dr. Huffman-Zechman, did not review the evidence that was accumulated after they issued their opinions. [Doc. 11 at 19]. Nothing requires an opinion source to review the entire record before issuing an opinion. Moreover, the ALJ stated that even though the state agency consultants issued their opinions without reviewing the entire record, those opinions were "consistent with and supported by the record as a whole." [T. at 33].

The Plaintiff further argues that the ALJ erred by giving significant weight to Dr. Isiguen's opinion because Dr. Isiguen opined that the Plaintiff's migraines did not impact his ability to work even though the Plaintiff was not working at the time of the examination. [Doc. 11 at 19-20]. According to the Plaintiff, the ALJ improperly weighed Dr. Isiguen's opinion because it is inconsistent with the record as a whole and is arbitrary and vague. [Id.]. The ALJ, however, determined that Dr. Isiguen's opinion reflected the Plaintiff's ability to work at the time that Dr. Isiguen issued the opinion, regardless of whether the Plaintiff was performing work at that time. [T. at 33 (stating that "Dr. Isiguen's assessment is consistent with the record showing that the claimant could generally perform work.")].

Finally, the Plaintiff argues that the ALJ erred by not giving more weight to the opinion evidence from Dr. Brantley. [Doc. 11 at 20-21]. The ALJ explained that he gave Dr. Brantley's opinion little weight because it provided a vague assessment, it did not relate to a matter within Dr. Brantley's specialty, and it was inconsistent with the record. [T. at 34]. While the Plaintiff agrees with the ALJ that Dr. Brantley's assessment was outside of his specialty, he nevertheless argues that Dr. Brantley's opinion should not have been discounted as inconsistent with the evidence. [Doc. 11 at 20-21]. The Court, however, does not "undertake to reweigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). That is the case here, where the ALJ weighed the conflicting evidence, assigned weight to the various opinions, and made a decision that is supported by substantial evidence.

Although the Plaintiff may disagree with the result that the ALJ reached, the record shows that the ALJ applied the correct legal standard in assessing the Plaintiff's RFC. Accordingly, the Court finds that the ALJ's RFC is supported by substantial evidence. The Plaintiff's second assignment of error is without merit.

### C. Whether the Plaintiff Could Return to Past Work

Plaintiff's third assignment of error is largely dependent upon his argument set forth in his second assignment. As he contended therein, if the ALJ had properly considered the evidence, he would have found that the Plaintiff would miss more than two or three days per month and would be off task more than fifteen percent of the time. [Id. at 18-19].[5] According to the

---

[5] According to the hypothetical questions that the ALJ posed to the VE, such limitations would have rendered the Plaintiff incapable of performing his past relevant work.

hypothetical questions that the ALJ posed to the VE, such limitations would have rendered the Plaintiff incapable of performing his past relevant work. As discussed above, the Plaintiff's arguments on his second assignment are without merit. As such, the ALJ did not err by concluding that the Plaintiff was capable of returning to his past relevant work and the Plaintiff's third assignment of error is without merit. Having concluded that the ALJ did not err by finding that the Plaintiff was capable of performing his past relevant work, there is no need to address the Plaintiff's argument regarding the availability of jobs in sufficient numbers in the national economy that the Plaintiff could perform. [Id. at 23].

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**, and that the Commissioner's Motion for Summary Judgment [Doc. 12] is **GRANTED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **AFFIRMED** and the case is hereby **DISMISSED**. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: January 15, 2020

Martin Reidinger
United States District Judge